DECISION
{¶ 1} Relator, Lone Star Steakhouse Saloon of Ohio, Inc., has filed an original action requesting that this court issue a writ of mandamus ordering respondent, the Industrial Commission of Ohio, to vacate the portion of its order awarding non-working wage-loss compensation to respondent Kristie K. Stuhldreher, from September 1, 2002 through January 22, 2003, and to enter an amended order that denies such compensation for that period.
 {¶ 2} This court referred the matter to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's requested writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision, in which relator essentially reargues issues already adequately addressed in that decision. For the reasons set forth in the magistrate's decision, the objections are overruled.
 {¶ 4} Based upon an examination of the magistrate's decision, and an independent review pursuant to Civ.R. 53, we find that the magistrate sufficiently discussed and determined the issues raised by relator. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Bryant and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Lone Star Steakhouse : Saloon of Ohio, Inc., : Relator, : v. : No. 03AP-1217 Kristie K. Stuhldreher and Industrial : (REGULAR CALENDAR) Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on August 19, 2004 Porter, Wright, Morris Arthur, and Christopher C.Russell, for relator.
Shapiro, Shapiro and Shapiro Co., L.P.A., Leah P. VanderKaay
and Geoffrey J. Shapiro, for respondent Kristie K. Stuhldreher.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action, relator, Lone Star Steakhouse Saloon of Ohio, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate that portion of its order awarding nonworking wage loss compensation from September 1, 2002 through January 22, 2003, to respondent Kristie K. Stuhldreher, and to enter an amended order that denies nonworking wage loss compensation for that period.
Findings of Fact:
 {¶ 6} 1. On May 8, 1999, Kristie K. Stuhldreher ("claimant") sustained an industrial injury while employed as the manager of one of relator's restaurants located in Boardman, Ohio. The industrial claim is allowed for "sprain right shoulder; sprain right elbow; right carpal tunnel syndrome; cubital tunnel syndrome, right ulnar nerve; right lateral epicondylitis; tunnel syndrome right radial nerve," and is assigned claim number 99-800008. Relator is a self-insured employer under Ohio's workers' compensation laws.
 {¶ 7} 2. Apparently, claimant has undergone several surgical procedures relating to her industrial claim and she has been paid various periods of temporary total disability ("TTD") compensation by her self-insured employer. In August 2002, TTD compensation was terminated by a commission order finding that claimant had reached maximum medical improvement ("MMI").[1]
 {¶ 8} 3. On May 1, 2003, claimant moved for R.C. 4123.56(B) wage loss compensation.
 {¶ 9} 4. Pursuant to Ohio Adm. Code 4125-1-01(C)(5)(e), the Ohio Bureau of Workers' Compensation ("bureau") provides form C-141 captioned "Wage Loss Statement for Job Search." The C-141 form instructs the wage loss applicant to complete the form weekly. Each form provides space for 11 employer contact entries but instructs that more than one form may be used for each week. At the top of the C-141 there are blank spaces for identification of the injured worker's name, the claim number and the week of the job search.
 {¶ 10} 5. Claimant submitted C-141 forms for weekly job searches beginning the weeks of September 1, 8, 15, 22, and 29, October 6, 13, 20, and 27, November 3, 10, 17, and 24, and December 1, 2002. For each of these 14 weeks, claimant submitted a C-141 form identifying 11 employer contacts for that week. Thus, for the period September 1, 2002 through December 7, 2002, claimant identified a total of 154 employer contacts during her job search.
 {¶ 11} 6. In addition to the 14 above-described C-141 forms, claimant also submitted five other C-141 forms that fail to identify the week of the job search. Each of those five C-141 forms also identify 11 employer contacts. Thus, the five additional C-141s contain a total of 55 employer contacts.
 {¶ 12} 7. For each employer contact entry, the C-141 form provides space for the claimant to provide information identifying the employer by name, address, and telephone number. Each entry also asks the claimant to describe the job applied for and to identify the "Contact person" and "Date of contact."
 {¶ 13} 8. The C-141 also asks the claimant to indicate the "Method of contact" by marking one or more boxes: "In person," "E-mail," "Telephone," "Fax," "Regular mail," or "Submitted resume." The C-141 also asks the claimant to indicate whether an employment application was filled out and whether an interview was granted.
 {¶ 14} 9. Generally, claimant failed to identify the "Date of contact" on substantially all of the entries, although, as previously noted, 14 of the C-141s identify the week of the job search.
 {¶ 15} 10. In the next four paragraphs, the magistrate will summarize the pertinent information that relator provided for the first four weeks in September 2002.
 {¶ 16} 11. Of the 11 employer contact entries contained in the C-141 submitted for the week of September 1, 2002, claimant identified a "Contact person" for seven of the entries. On four of those seven entries, the "Contact person" was simply identified as "MGR [manager]." The remaining three entries listed "Brian," "Rich," and "Randy" as the contact persons. Of the 11 entries, four involved "In person" contacts. Telephone numbers were listed for nine of the 11 employers.
 {¶ 17} 12. Of the 11 employer contact entries contained on the C-141 submitted for the week of September 8, 2002, claimant identified a "Contact person" for four of the entries. Claimant listed "Eric Buss," "V. Schrader," "Bob Alexander," and "Sherry" as the contact persons on the four entries. Telephone numbers are listed for four of the 11 entries.
 {¶ 18} 13. Of the 11 employer contact entries contained in the C-141 submitted for the week of September 15, 2002, claimant identified a contact person for two of the 11 entries. Claimant listed "Elaine" and "District Manager" for those two entries. Telephone numbers are listed for seven of the 11 entries.
 {¶ 19} 14. Of the 11 employer contact entries contained in the C-141 submitted for the week of September 22, 2002, claimant identified a contact person for two of the 11 entries. Claimant listed "Tracy" and "Jeff" for those two entries. Telephone numbers are listed for four of the 11 entries.
 {¶ 20} 15. Following a July 10, 2003 hearing, a district hearing officer ("DHO") issued an order granting wage loss compensation. The DHO's order states:
It is the order of the District Hearing Officer that the claimant's request for Non-Working Wage Loss for the period of time from 09/01/2002 to 01/22/2003, inclusive, is granted. The District Hearing Officer finds that the claimant had permanent physical restrictions as set forth in the medical report/form submitted by Dr. Schwendeman dated 11/27/2002. These restrictions prevented the claimant from performing the duties of her prior position of employment. These restrictions include, but are not limited to, restrictions in sitting, standing, and walking; restrictions in the ability to lift and carry; and, restrictions in the ability to use her upper extremities.
The District Hearing Officer finds that the claimant returned to employment on 01/23/2003 and had continued to be employed up to the date of hearing. The District Hearing Officer further finds that the claimant has requested Working Wage Loss for this period of time and to continue into the future. The District Hearing Officer finds that the claimant began working at the Residence Inn as a night auditor making $7.00 per hour and working a 40 hour week. The claimant continued at this position until 07/02/2003. On 07/07/2003, the claimant began working at McDonald's Restaurant and earned $5.50 an hour for her initial week of work and is to be paid an annual salary of $28,000 thereafter.
The District Hearing Officer finds that the claimant's earnings are less than the claimant's wages were at the time of this industrial injury and that this wage loss is the result of a medical impairment which is causally related to the 05/08/-1999 injury.
The District Hearing Officer further finds that the employer's argument regarding the claimant's job search is not persuasive. The District Hearing Officer acknowledges that some of the claimant's search contacts do not contain either a date or the name of a person contacted at the potential employer. However, the claimant testified that a number of her applications were submitted either to post office boxes or on the internet. While the District Hearing Officer is cognizant that employment contacts of this nature cannot necessarily be verified, the District Hearing Officer finds that such contacts are better than no attempts to find employment and that the claimant's current employment was obtained through such a contact.
The District Hearing Officer finds that the claimant has otherwise complied with the requirements of the Industrial Commission Wage Loss Rule as set forth in Ohio Administrative Code 4125-1-01.
The District Hearing Officer orders Non-Working Wage Loss for the period stated above, payable pursuant to Ohio Revised Code4123.56.
The District Hearing Officer orders Working Wage Loss for the period 01/23/2003 to 07/02/2003, payable pursuant to Ohio Revised Code 4123.56, and from 07/07/2003 through 07/10/2003, the date of today's hearing and to continue upon submission of appropriate entitlement to such continuing benefit, payable pursuant to Ohio Revised [C]ode 4123.56.
 {¶ 21} 16. Relator administratively appealed the DHO's order. Following an August 25, 2003 hearing, a staff hearing officer ("SHO") issued an order stating:
The order of the District Hearing Officer, from the hearing dated 07/10/2003, is modified to the following extent: Therefore, the Claimant's C-86 Motion, filed 05/01/03, is granted to the extent of this order.
The Staff Hearing Officer finds that the Claimant is unable to return to work at her former position of employment. The Claimant's former position of employment was as the General Manager of Lone Star Steakhouse. The Claimant was able to find a new position on 01/23/03 with Residence Inn. She is now working at McDonald's and this position began 07/07/03. She also works for the Fraternal Order of Eagles as a Data Clerk and earns $25.00 per week.
Therefore, it is the order of the Staff Hearing Officer that the following Wage Loss Compensation be paid. Wage Loss Compensation is ordered paid at the rate of two-thirds of the Wage Loss (up to the statutory maximum) computed as follows:
Two-thirds of the difference between the Average Weekly Wage and Claimant's earnings, which vary from her wage statements.
The Staff Hearing Officer notes that the Claimant received no earnings from 09/01/02 through 01/22/03, inclusive. Thus, the Staff Hearing Officer orders that Non-working Wage Loss Compensation shall be paid from 09/01/02 through 01/22/03, inclusive. The Staff Hearing Officer finds that the Claimant conducted a good-faith job search for this period.
This decision is based on the Claimant's job search logs and Dr. Schwendeman's 11/27/02 report.
Working Wage Loss shall be paid from 01/23/03 through 05/27/03 inclusive, and to continue upon submission of evidence of wage loss. The Staff Hearing Officer notes that the only evidence of medical restrictions is from Dr. Schwendeman in the form of a C-140 medical report documenting Claimant's permanent restrictions dated 11/27/02.
This decision is based on Claimant's employment with the Residence Inn as a Night Auditor, which began on 01/23/03. The Claimant earned approximately $7.00 per hour and worked 40 hours per week in that position. This decision is also based on Dr. Schwendeman's 11/27/02 report.
 {¶ 22} 17. On October 1, 2003, another SHO mailed an order refusing relator's administrative appeal and the SHO's order of August 25, 2003.
 {¶ 23} 18. On December 9, 2003, relator, Lone Star Steakhouse Saloon of Ohio, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 24} The issue is whether the commission abused its discretion by accepting claimant's wage loss statements as evidence supporting its determination that claimant conducted a good-faith job search for the period she was awarded nonworking wage loss compensation, i.e., from September 1, 2002 to January 22, 2003.
 {¶ 25} Finding no abuse of discretion in accepting the wage loss statements as evidence of a good-faith job search, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 26} Ohio Adm. Code 4125-1 sets forth the commission's rules regarding wage loss compensation.
 {¶ 27} Ohio Adm. Code 4125-1-01(C) states in part:
(5) All claimant's seeking or receiving working or non-working wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein. The claimant's failure to submit wage loss statements in accordance with this rule shall not result in the dismissal of the wage loss application, but shall result in the suspension of wage loss payments until the wage loss statements are submitted in accordance with this rule.
(a) A claimant seeking or receiving wage loss compensation shall complete a wage loss statement(s) for every week during which wage loss compensation is sought.
* * *
(d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.
(e) Wage loss statements shall be submitted on forms provided by the bureau of workers' compensation.
Ohio Adm. Code 4125-1-01(D) states in part:
The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied. * * *
In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determination on, evidence in the file, or presented at hearing, relating to:
(1) The claimant's search for suitable employment.
* * *
(c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking nonworking wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work * * *. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. In evaluating whether the claimant has made a good faith effort, attention will be given to the evidence regarding all relevant factors including, but not limited to:
(i) The claimant's skills, prior employment history, and educational background;
(ii) The number, quality (e.g., in-person, telephone, mail, with resume), and regularity of contacts made by the claimant with prospective employers, public and private employment services[.]
 {¶ 28} Relator argues that the commission cannot accept claimant's wage loss statements because they allegedly failed to comply with Ohio Adm. Code 4125-1-01(C)(5)(d) which, again, states:
(d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.
 {¶ 29} Relator seems to suggest that all of the wage loss statements and literally all of the entries contained in those statements must be eliminated from evidentiary consideration because, allegedly, every entry has a flaw. Relator argues:
Here, simply stated, Respondent Stuhldreher has failed to comply with the mandatory requirements of Chapter 4125. As a review of the attached job search documentation reveals, on virtually all of the wage loss documents that have been submitted by Respondent Stuhldreher and provided to the employer, Respondent Stuhldreher has failed to identify a contact person, failed to provide a date of contact, and in many instances has failed to provide a telephone number of her alleged prospective employer.
* * *
Significantly, a review of Respondent Stuhldreher's job search documentation will reveal that virtually every entry has a flaw. Specifically, of the approximately 200 job search entries that were before the Staff Hearing Officer, more than 150 had no contact person identified!
Simply stated, there is absolutely no question that the Claimant's application for wage loss compensation in this claim must be denied.
(Relator's brief at 4-5.)
 {¶ 30} Relator's argument expresses a concern regarding three items that the C-141 asks the claimant to provide: (1) a "Contact person," (2) "Date of contact," and (3) "Telephone number."
 {¶ 31} Analysis begins with relator's concern for claimant's failure to list the "Date of contact" for substantially all of the entries. Significantly, Ohio Adm. Code 4125-1-01(C)(5)(d), the rule that relator relies upon, does not require a "Date of contact" for wage loss statements. Notwithstanding the rule's failure in that regard, obviously, the evidentiary value of an entry is enhanced by the listing of a date of contact as the C-141 form requests.
 {¶ 32} Ohio Adm. Code 4125-1-01(5)(a) states that a claimant seeking wage loss compensation shall complete a wage loss statement for every week during which wage loss compensation is sought. The C-141 form is designed to meet this weekly requirement. As previously noted, the form asks the claimant to identify the week relating to the employer contact entries. As previously noted, claimant identified the week on 14 of the C-141s submitted.
 {¶ 33} Clearly, contrary to relator's argument here, the failure to list the date of contact does not automatically invalidate the entry.
 {¶ 34} The magistrate will now address relator's concern regarding the absence of a listing of a contact person for many of the entries. Relator's assertion that "on virtually all of the wage loss documents * * *, [claimant] has failed to identify a contact person," seems to suggest that a failure to list a contact person on one or more entries of a wage loss statement invalidates all of the entries on the wage loss statement. If relator meant to suggest such a proposition, the suggestion is clearly without merit. Clearly, even if it can be argued that the listing of a contact person is absolutely essential to the evidentiary integrity of an entry, obviously a flaw as to one entry would not invalidate other entries that do list a contact person.
 {¶ 35} Moreover, in the magistrate's view, Ohio Adm. Code4125-1-01(C)(5)(d) cannot be interpreted as setting forth inflexible requirements for the claimant's reporting of his or her employer contacts during the job search. Relator's emphasis on the word "shall" in Ohio Adm. Code 4125-1-01(C)(5)(d) does not persuade this magistrate that the rule must be interpreted as setting forth rigid requirements for wage loss statements that would require the evidentiary elimination of any entry or statement that fails to list all of the information that the C-141 requests.
 {¶ 36} The same analysis applies to relator's claim that the failure to list the employer's telephone number invalidates the claimant's entry showing the employer contact.
 {¶ 37} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke 
KENNETH W. MACKE MAGISTRATE
[1] The findings of fact contained in paragraph 2 are supported by the "Statement of Facts" contained in relator's brief.